UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAUL D. LATHON, Sr., | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
|     vs. | )   Case number 4:04cv0597 DJS |
| | )                              TCM |
| CHUCK DWYER, | ) |
| | ) |
|     Respondent. | ) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The 28 U.S.C. § 2254 petition of Paul D. Lathon ("Petitioner"), a Missouri prisoner, for federal habeas corpus relief is before the undersigned United States Magistrate Judge for a review and a recommended disposition. See 28 U.S.C. § 636(b).

**Background**

Petitioner was indicted in May 2000 on charges of first degree murder for the fatal shooting of Eddie Mozee, of first degree assault for the shooting of Lavone T. Carthen, and of armed criminal action for the use of a deadly weapon in the two shootings.[1] (Resp. Ex. E at 5-6.) A charge of being a persistent offender was added in November. (Id. at 11.)

Petitioner's trial began in February 2001.

---

[1] A fifth charge of knowingly burning a 1979 Cadillac was dismissed by the State at the beginning of trial. (Resp. Ex. E at 3.)

At the beginning of voir dire, the prosecutor informed the panel that he had the burden of proving the elements of the offenses "beyond a reasonable doubt" and that the defendant was presumed innocent.  (Resp. Ex. D, voir dire tr. at 14-16, 18.)  He added: "After the State puts on the evidence and the defense puts on evidence, you may change your mind, that's up to you when you go back and deliberate.  But as he sits here now he's presumed innocent."  (Id. at 18.)  When questioning a panel member who indicated he would not convict someone on the basis of eyewitness identification, the prosecutor addressed the panel:

> I want to have people on the jury that will listen to the evidence and haven't made up their mind before they've heard the evidence that they're not going to consider this or they're not going to consider that; both for me and the defense, because the defense could put on evidence, too.

(Id. at 31.)  Trial counsel requested a mistrial on the grounds that the prosecutor had made a comment on the defendant's right not to testify.  (Id. at 32.)  The prosecutor informed the trial court that he could cite case law that held he could point out that both sides had the opportunity to present evidence and that was all he was saying.  (Id.)  The trial court told him to "pull up the cases [he was] talking about."  (Id. at 33.)  The questioning of the panel member continued.  The panel member stated that he would hold the State to a higher burden of proof in murder cases relying on eyewitness identification.  (Id. at 39.)  The prosecutor replied: ". . . [F]orget about whether it's identification case, or who done it, or self-defense, or alibi; whatever the defense would possibly be.  Forget about that, okay? that remains to be seen in any case."  (Id.)  Trial counsel again requested a mistrial.  (Id.

- 2 -

at 40.) The prosecutor explained he was trying to get the panel member struck for cause. (Id.) The trial court noted that he had "said it three different times in three different ways, and it has [trial counsel] concerned as it has me concerned." (Id. at 41.) The court deferred its ruling on the request for a mistrial, but instructed the prosecutor to produce the cases at the next recess. (Id.)

Addressing the panel, the prosecutor outlined the progression of the case, beginning with an explanation of opening statements. (Id. at 47-48.) He next commented: ". . . After the opening statement then you have evidence. Evidence are witnesses that come forward and testify. The prosecutor, the State, puts its evidence on first. The defense can put on evidence if they desire." (Id. at 48.) Trial counsel objected. (Id.) The trial court admonished the prosecutor: "How many times are you going to do this during the course of voir dire? We've been here forty minutes and you've alluded to the defendant's right to put on evidence or not put on evidence. This is the fourth time." (Id. at 49.) The prosecutor explained that he was "discussing the order of trial." (Id.) A recess was called for the prosecutor to produce the cases he had earlier mentioned. (Id.) After reviewing the two cases cited by the prosecutor, the court noted its disagreement with trial counsel's position that the prosecutor had effectively said that the defendant had to testify, but repeated its concern with the number of times that the prosecutor had mentioned the defense "'may or may not'" present testimony. (Id. at 51.) The court instructed the prosecutor not to do it again, observing that he had done so four times in less than an hour. (Id. at 52.)

Later, on pages 109 and 110 of the transcript, the prosecutor commented to the panel that "[a]ll cases that come to court are in dispute which means possibly taking one person's word against another. You might have to do that." Trial counsel objected on the grounds that it was another comment on the defendant's right not to testify. (Id. at 110.) The trial court disagreed. (Id.)

On page 142 of the transcript, the prosecutor referred to the past two and one-half hours. On page 184, trial counsel informed the panel that Petitioner did not have to testify and that no inference could be drawn from his silence. She inquired if any panel member would require him to testify. (Id.) No one did. (Id.) The voir dire concluded at page 187.

The next day, the prosecutor made his opening statement. (Resp. Ex. D at 9-24.) He outlined his case as follows. On April 8, 2000, Carthen let Petitioner use his car, a four-door Cadillac, for a day in exchange for some crack cocaine. (Id. at 11, 13-14.) The next day, he and Mozee went to the agreed-upon location to retrieve the car. (Id. at 11-12.) Petitioner was not there. (Id. at 12.) The two men then walked over to a motel where Petitioner stayed and found the car. (Id.) Carthen saw Petitioner and Petitioner's girlfriend, Julia Jones. (Id.) Carthen asked for his car back. (Id.) Petitioner demanded money for the crack cocaine; he was angry and he had a gun. (Id. at 12-13.) Mozee and Carthen got in the back seat of the car. (Id. at 13, 14.) Jones was in the front seat. (Id.) Petitioner started driving; Carthen asked when he was going to get his car back. (Id. at 13.) Mozee started asking Carthen why he gave Petitioner his (Mozee's) car, thinking Petitioner might give it back to him if not to Carthen. (Id. at 14.) Carthen told Mozee to

"shut up." (Id. at 15.) Mozee did not, turning to the side to argue with Carthen. (Id.) Petitioner turned and shot Mozee in the side back of his head. (Id.) Carthen asked to be let out. (Id.) As Petitioner made a right turn, Carthen jumped out of the car, picked himself up, and started running. (Id. at 16.) Petitioner got out of the car and started firing at Carthen, hitting him once in the back of his right leg. (Id.) When the car stopped, Jones jumped out and ran. (Id. at 16-17.) Petitioner got back into the car, drove it to a vacant school yard, poured gasoline on it, and set it, including Mozee's body, on fire. (Id. at 18.)

Jones told her mother about the shootings and shortly thereafter told the police. (Id. at 19-20.) After listening in on a telephone conversation when Petitioner called Jones, the police found him. (Id. at 21-23.) Petitioner ran; he was caught. (Id.)

The prosecutor presented evidence to support his opening statement, including testimony by (a) the police officer who found the car on fire, with Mozee's body inside, and who later, with two detectives, took Jones to identify that car; (b) Jones and her mother; (c) the detective who investigated and photographed the area with the blood trail left by Carthen from the spot where he was shot to the spot where he collapsed; (d) Carthen; (e) the physician who performed the autopsy on Mozee; (f) the firearms expert who identified the bullet taken from Mozee's head as a .38 caliber bullet; (g) one of the police officers who went to arrest Petitioner and chased him into the apartment building where he was arrested; and (h) another police officer who joined in the chase and found Petitioner in a closet in the building. (Id. at 25-27, 33-36, 57-62, 64-70, 72-84, 86-94, 96-109, 147-66, 167-88, 190-98, 200-02, 206-16, 243-49, 252-55, 258-79.)

Petitioner presented the testimony of a detective who took Petitioner's clothing to a lab for analysis after his arrest on April 11, 2000, and of a forensic scientist who found no accelerant on that clothing when he tested it the next day. (Id. at 282-83, 289-94.)

The jury was instructed that, among other things, "a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify." (Resp. Ex. E at 62.) The jury returned a verdict of guilty on all four counts. (Resp. Ex. D at 360.) Petitioner was sentenced to life imprisonment without parole on the murder conviction and on the assault conviction and to twenty-five years' imprisonment on each of the armed criminal action counts. (Resp. Ex. E at 81.) All were to be served concurrently. (Id.) The docket entry reflected a sentence of life on the assault charge and not of life without parole. (Id. at 4.)

Petitioner appealed, arguing (1) the trial court had abused its discretion when overruling trial counsel's objections to the prosecutor's indirect references during voir dire to the defense's presentation of evidence; (2) the trial court had abused its discretion when overruling trial counsel's request for a mistrial when Jones repeatedly volunteered that Plaintiff had beaten her,[2] such statements being evidence of uncharged crimes and inadmissible character evidence and being the subject of a granted motion in limine; and

---

[2]There are three complained-of answers. When asked on direct examination why she was scared after she saw the gun, Jones replied, "He had jumped on me the day before." (Resp. Ex. D at 70.) When asked why her car door was already opened when Carthen had told Petitioner that he wanted to get out of the car, Jones replied, "Because when I seen the gun, it already freaked me out. He already beat the hell out of me." (Id. at 84.) Asked what she had said on a tape-recording of a conversation with Petitioner, she clarified, "He done beat me damn near to death." (Id. at 102.)

(3) the trial court had plainly erred when sentencing him to a term of life without parole on the assault conviction because the oral pronouncement of sentence had simply been life imprisonment. (Resp. Ex. F.)

Three days after the State had filed its respondent's brief, the trial court amended Petitioner's sentence on the assault conviction to be for life imprisonment, consistent with the earlier docket entry. (Resp. Ex. E, Supp. File.)

The appellate court denied relief in a two-paragraph per curiam order. (Resp. Ex. H.)

Petitioner next moved for post-conviction relief. (Resp. Ex. C at 3-51.) This motion, amended by counsel, was denied without an evidentiary hearing. (Id. at 53-71, 74-90.) The court found, in relevant part, as follows:

> [ ] Movant alleges in his amended motion that trial counsel was ineffective for failing to call Ms. Charlin Moody and Mr. Charles Moody as witnesses at trial, to impeach the trial testimony of State's witness Ms. Julia Jones. Ms. Julia Jones had testified at trial that she had never used a gun. Movant alleges that Charlin Moody and Charles Moody would have testified that they saw Ms. Julia Jones point a gun at another woman in February or March, 2000, thereby impeaching Julia Jones' testimony that she never used a gun. Movant alleges that such impeachment would have established a viable defense for Movant, by causing Ms. Jones to be less credible, and by supporting the defense that Movant was struggling with Ms. Jones over the gun when it fired in the car killing the victim.
>
> This Court finds no testimony or evidence at trial that Ms. Jones ever had possession of the gun while in the car, nor was there any evidence at trial of a struggle between Movant and Ms. Jones over the gun in the car. In other words, there was no evidence presented at trial to support the defense or theory which Movant alleges in his Motion. The first time Movant's theory arises, that he struggled with Ms. Jones in the car over the gun, is in his Motion for Post-Conviction Relief. Assuming, arguendo, that Ms. Jones had

in fact used a gun in February or March, 2000, and trial counsel called two witnesses to prove that fact, there is still no evidence whatsoever that Ms. Jones had possession of a gun or that a struggle ensued over that gun between Jones and Movant. Simply put, there was not one shred of evidence, at trial, of the defense Movant now offers. Impeaching Ms. Jones at trial would not have created a viable defense for Movant. In order for there to be evidence of a struggle over the gun in the car, witnesses would have had to testify about such a struggle. However, no witnesses did so testify.

Movant also alleges trial counsel was ineffective for failing to call Ms. Denise Singleton as a witness at trial. Movant alleges that Ms. Singleton would have testified that Ms. Jones pointed a gun at Movant in January 2000, thereby again impeaching the testimony of Ms. Jones that she had never used a gun.

Again, impeaching Ms. Jones by the testimony of Ms. Singleton, in no way establishes the defense that Movant now offers, to wit; that Movant struggled with Ms. Jones over the gun when it discharged killing the victim. There simply was no testimony at trial that Ms. Jones had a gun in the car, or that Movant struggled with Ms. Jones in the car over a gun when the victim was killed.

[ ] Movant alleges that impeaching Ms. Jones about her prior gun usage would have caused her to be less credible to the jury. This allegation is mere speculation on the part of Movant.

. . . .

. . . Since there was no evidence presented at trial that Ms. Jones possessed or used a gun on the day of the murder, it is irrelevant whether she possessed or used a gun on some prior occasion. The trial court would have been within its sound discretion to disallow collateral testimony concerning Ms. Jones' prior gun usage.

(Id. at 77-80.) (Alterations added.)

Again, Petitioner appealed, arguing trial counsel had been ineffective for failing to locate, interview, and call Charline Moody, Charles Moody, and Denise Singleton to rebut Jones' testimony that she had never used a gun before. (Resp. Ex. I.) The appellate court

- 8 -

denied relief, finding (a) the testimony of the three missing witnesses would not have provided Petitioner with a viable defense because there was no evidence presented at trial that Mozee was killed during a struggle between Petitioner and Jones for the gun and (b) the witnesses' testimony would have been irrelevant and collateral to the issues that were raised at trial because there was no evidence that Jones possessed or used a gun on the day of the murder. (Resp. Ex. K.)

Petitioner now seeks federal habeas relief on the grounds presented to the state appellate court. Respondent contends each is without merit.[3]

## Discussion

Standard of Review. Title 28 U.S.C. § 2254(d) mandates that a federal court "not grant habeas relief on a claim that was adjudicated on the merits in state court unless 'it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999) (quoting § 2254(d)(1)), or it "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" **Evans v. Rogerson**, 223 F.3d 869, 871 (8th Cir. 2000) (quoting § 2254(d)(2)). See also **Weaver v. Bowersox**, 241

---

[3]Respondent initially argued that the petition was untimely filed. This argument was rejected on the grounds of **Pierson v. Dormire**, 484 F.3d 486, 493-95 (8th Cir. 2007). Respondent notes that the Eighth Circuit Court of Appeals has granted rehearing en banc on the timeliness issues resolved in **Pierson**. The possibility that a future en banc decision might change the **Pierson** holdings does not allow for a revisiting of those issues in the instant case.

F.3d 1024, 1029 (8th Cir. 2001) ("Section 2254(d) distinguishes between two types of erroneous decisions – those of law and those of fact[.]").

The "contrary to" clause and the "unreasonable application" clause have independent meanings. **Williams v. Taylor**, 529 U.S. 362, 405 (2000). "[A] state court decision is 'contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent.'" **Lockyer v. Andrade**, 538 U.S. 63, 73 (2003) (quoting Williams, 529 U.S. at 405-06) (alterations added). "On the other hand, a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." **Williams**, 529 U.S. at 406 (alteration added). Thus, a state court decision that correctly identifies the controlling legal authority and, applying that authority, rejects a prisoner's claim does not fit within the "contrary to" clause although it might be contrary to a federal court's conception of how that authority ought to be applied in that particular case. **Id.**

Such a state court decision can, however, fit within the "unreasonable application" clause. **Id.** at 407-08. "[W]hen a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause." **Id.** at 409 (alterations added). "[A] federal habeas court making the

'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." **Id.** (alteration added). When making this inquiry, a federal habeas court should note that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." **Id.** at 410. "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." **Lockyer**, 538 U.S. at 75 (internal quotations omitted). And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'" **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting Long v. Humphrey, 184 F.3d 758, 761 (8th Cir. 1999)) (alterations in original). Additionally, "the [state courts'] 'summary nature' of the discussion of [a] federal constitutional question does not preclude application of the AEDPA standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (alterations added).

<u>Ineffective Assistance of Trial Counsel.</u> "The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting Kimmelman v. Morrison, 477 U.S. 365, 374 (1986)). "'The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding]

cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir. 1999)) (first alteration added; second in original). "Only reasonable competence, the sort expected of the ordinary fallible lawyer, is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (internal quotations omitted). Moreover, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001) (alteration added).

To establish that counsel's lack of competence violated the Sixth Amendment, the petitioner must show that counsel's performance was deficient and prejudicial. **Kellogg**, 176 F.3d at 452. To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 971 (8th Cir. 1999) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Id.** (quoting Strickland, 466 U.S. at 697). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694). "'In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" **Lawrence v. Armontrout**, 31 F.3d 662, 666 (8th Cir.

1994) (quoting Strickland, 466 U.S. at 695). The burden of showing a reasonable probability is the petitioner's. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Hoon v. Iowa**, 313 F.3d 1058, 1061 (8th Cir. 2002); **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001). Thus, if a petitioner has failed to show that, but for an allegedly deficient performance by his trial counsel, there is a reasonable probability that the outcome of his trial would have been different, his claim of ineffective assistance of counsel fails. **Morales v. Ault**, 476 F.3d 545, 550 (8th Cir. 2007).

Petitioner argues in his first ground that trial counsel was ineffective for failing to investigate and call Charlin and Charles Moody and in his second ground that trial counsel was ineffective for failing to investigate and call Denise Singleton. He alleges that these witnesses would have testified that Jones had used a gun before, thereby impeaching her trial testimony and supporting his defense that Mozee was killed during a struggle between he and Jones for the gun.[4] On cross-examination, Jones had replied, "No," to the question

---

[4] In his traverse, Petitioner further argues that trial counsel should have impeached Jones with her conflicting statements to police and prosecutors and in her deposition. The undersigned will not address allegations raised for the first time in a traverse.

whether she had ever used a gun before and "No, no," to the question if she had had a gun when paranoid and high.  (Resp. Ex. D at 116.)  She also said no when asked if she had ever had a gun in the hotel room.  (Id.)

"To prove prejudice from a trial attorney's failure to investigate potential witnesses, a petitioner must show how the uncalled witnesses would have testified at trial *and* that their testimony would have probably changed the outcome of the trial."  **Stewart v. Nix**, 31 F.3d 741, 744 (8th Cir. 1994) (emphasis added).  Petitioner has failed to satisfy the second requirement.  As noted by the motion court, the three witnesses' testimony that Jones had possessed a gun a month or two before the shooting would have, at best, impeached her testimony that she had never used a gun.  It would not have impeached her *and* Carthen's eyewitness testimony about Petitioner shooting Mozee and Carthen, nor would it have established that she had gun in the car that day.  It also could not possibly have supported a defense – that Mozee was shot during a struggle – that was never presented at trial.

Therefore, Petitioner's claims of ineffective assistance of counsel are unavailing.  See e.g., **United States v. Staples**, 410 F.3d 484, 489 (8th Cir. 2005) (rejecting claim of ineffective assistance of trial counsel for not calling witnesses whose testimony would have been contradicted by *eye*witnesses' testimony); **United States v. Robinson**, 301 F.3d 923, 925-26 (8th Cir. 2002) (rejecting claim of ineffective assistance of trial counsel for failure to investigate a witness whose testimony could have been impeached if investigation had been done, and holding that "even if [witness's] testimony had been

impeached the remainder of the evidence clearly demonstrates [defendant's] involvement in the conspiracy" and thus, defendant had not demonstrated reasonable probability outcome would have been different); **McRoberts v. Bowersox**, 234 F.3d 1021, 1022 (8th Cir. 2000) (rejecting claim alleging trial counsel was ineffective for failing to call three known witnesses who would have testified that they knew of no feud between petitioner and the victim but did know of one between the state's witness and victim, thereby showing jury that state's witness had greater motive to kill victim; petitioner had failed to show that outcome of trial would have been different had witnesses been called).

Prosecutor's Remarks During Voir Dire. Petitioner next argues that the prosecutor impermissibly and repeatedly commented during voir dire on his right not to testify.

When reviewing claims of improper comments by the prosecutor, "[t]he question . . . is 'whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" **Clemons v. Luebbers**, 381 F.3d 744, 757 (8th Cir. 2004) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (8th Cir. 1986)) (alterations added). This standard of review is "'a narrow standard of due process and not a broad exercise of supervisory power.'" **Pollard v. Delo**, 28 F.3d 887, 890 (8th Cir. 1994). And, "[t]o decide the effect of a prosecutor's remarks, [the court] examine[s] the totality of the circumstances." **Roberts v. Bowersox**, 137 F.3d 1062, 1066 (8th Cir. 1998) (alterations added).

Assuming, without deciding, that the prosecutor's remarks did constitute improper comments on Petitioner's right not to testify, they do not provide habeas relief. The

remarks were made during the first of at least two and one-half hours of his voir dire questions. After the prosecutor concluded his questioning of the panel, trial counsel informed the panel that Petitioner did not have to testify and that no inference could be drawn from his failure to do so. And, the jury was later instructed that Petitioner did not have to testify and that no presumption of guilt or inference of any kind could be drawn from the fact he did not.

In **Williams v. Groose**, 77 F.3d 259, 262 (8th Cir. 1996), the Eighth Circuit Court of Appeals rejected a claim that the prosecutor's remarks about the burden of proof and reasonable doubt during voir dire had violated the petitioner's constitutional rights. The court noted that even if such remarks had violated state law, they had not violated due process because the jury instructions had correctly defined reasonable doubt; thus, the remarks did not make the petitioner's "entire trial fundamentally unfair." **Id.** See also **Wood v. Lockhart**, 809 F.2d 457, 462 (8th Cir. 1987) (similar holding).

Given that the prosecutor's remarks were during the first third of voir dire and were followed by trial counsel's clarifying remarks and that the jury was instructed that he did not have to testify and that they could draw no inference from his silence, the complained-of remarks did not render Petitioner's entire trial fundamentally unfair.

Julia Jones' Testimony. Petitioner further argues that his constitutional rights were violated by Jones' three references to other crimes.[5] The state appellate court summarily rejected this claim.

"[I]n habeas corpus proceedings, it is not within [the federal courts'] province to 'reexamine state-court determinations on state-law questions.'" **Johnston v. Luebbers**, 288 F.3d 1048, 1056 (8th Cir. 2002) (quoting Estelle v. McQuire, 502 U.S. 62, 67-68 (1991)) (alterations added). See also **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court."). Thus, "'[a] state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" **Osborne v. Purkett**, 411 F.3d 911, 917 (8th Cir. 2005) (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)) (alteration added). Accord **Rousan v. Roper**, 436 F.3d 951, 958-59 (8th Cir. 2006). "[T]his due process standard mandates a greater showing of prejudice than is needed to support a finding of plain error on appeal." **Griffin v. Delo**, 33 F.3d 895, 905 (8th Cir. 1994) (alteration added). Consequently, federal habeas review of an alleged due process violation in a state court conviction is narrow. **Anderson v. Goeke**, 44 F.3d 675, 679 (8th Cir. 1995).

---

[5]In his traverse, Petitioner also argues that he "has come to believe" that the prosecutor improperly introduced the police report. Again, the undersigned will not address allegations raised for the first time in a traverse.

In **Bucklew v. Luebbers**, 436 F.3d 1010, 1018-19 (8th Cir. 2006), the petitioner had alleged that his trial counsel was ineffective for opening the door to evidence that he had previously assaulted his former girlfriend. At trial for the murder of her current boyfriend, the trial court had granted a defense motion in limine prohibiting such evidence. Trial counsel had referred in opening statements to the incident when Petitioner had found his former girlfriend with the murder victim to demonstrate that Petitioner was distraught. The prosecutor then was able to introduce evidence of all the circumstances, including Petitioner threatening the former girlfriend, cutting her jaw, and punching her in the face. **Id.** at 1013. The Eighth Circuit Court of Appeals held that the evidence of the assault "was not so prejudicial as to amount to a denial of due process." **Id.** at 1018.

In the instant case, Jones thrice spontaneously referred to Petitioner assaulting her. Regardless whether this testimony violated state law, in addition to the trial court's ruling on the motion in limine, it was not so prejudicial as to deny Petitioner due process. There were two eyewitnesses to the murder and assault – Jones *and* Carthen. Her three brief references to his past violent behavior to her would not have affected the jury's verdicts.

Sentencing Error. For his fifth and final claim, Petitioner argues he was denied due process when sentenced to life imprisonment without parole on the assault charge because such sentence was not consistent with the life sentence orally imposed and reflected on the docket entry. His sentence was amended during the briefing cycle on direct appeal and is now for simply life. Assuming, without deciding, that his claim is cognizable on federal habeas review, it is moot.

## **Conclusion**

For the foregoing reasons, the state courts' resolution of Petitioner's § 2254 claims is not contrary to clearly established Federal Law, is not an unreasonable application of such law, and is not an unreasonable determination of the facts. Consequently, these claims are unavailing. Accordingly,

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Paul D. Lathon, Sr., be **DENIED** without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact. See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of August, 2007.